## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Jeryme Morgan (R-29175),     ) | |
|     ) | |
| Petitioner,     ) | |
|     ) | Case No. 22 C 2330 |
| v.     ) | |
|     ) | Hon. Robert W. Gettleman |
| Dee Dee Brookhart, Warden,     ) | |
|     ) | |
| Respondent.     ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Jeryme Morgan, a prisoner at Lawrence Correctional Center, petitions this court for a writ of habeas corpus under 28 U.S.C. § 2254. Challenging his 2009 Cook County convictions for aggravated criminal sexual assault, robbery, and kidnapping, he claims his due process rights were violated because the DNA evidence was insufficient to prove his guilt beyond a reasonable doubt, and his trial attorney was constitutionally ineffective for failing to object to the admission of other-crimes evidence and related limiting instruction. Respondent contends this court cannot reach the merits of the petition because Morgan's claims are both untimely and procedurally defaulted. As explained below, the court agrees. The § 2254 petition is therefore denied, and the court declines to issue a certificate of appealability.

## I.        BACKGROUND[1]

### A.    Morgan's Trial

Following a 2009 jury trial, Morgan was convicted of three counts of aggravated criminal sexual assault, and one count each of robbery and kidnapping. *People v. Morgan*, 2012 IL App

---

[1] The following facts are drawn from the state court record, (Dkt. 13), and the state appellate court opinions on direct review, *People v. Morgan*, 2012 IL App (1st) 093388-U, and postconviction appeal, *People v. Morgan*, 2020 IL App (1st) 171331-U. Neither party has submitted a complete copy of the state trial court transcript, which is unnecessary in this case as this court may take the facts from the state appellate court's opinions because "they are presumptively correct on habeas review," and Morgan has not rebutted this presumption by clear and convincing evidence. *See*

(1st) 093388-U, ¶ 2. His convictions stemmed from a 2007 sexual assault on M.H. in the parking lot of her apartment complex. *Id.* at ¶ 3. M.H. testified that she was walking toward the entrance of her building when a man, whom she later identified as Morgan, grabbed her around the neck, placed a gun to her head, and pulled her into the backseat of a "tealish color" SUV. *Id.* at ¶ 4. Morgan got in the backseat with M.H. and sexually assaulted her, vaginally and anally. *Id.* M.H. struggled to escape, but Morgan repeatedly hit her in the head with his gun and bit her neck, causing her to bleed. *Id.* Morgan also forced M.H. to perform oral sex at gunpoint. *Id.*

M.H. testified that after the sexual assault, Morgan returned to the front seat of the SUV and demanded her credit cards, ATM card, and keys. *Id.* at ¶ 5. He then drove to an ATM, ordered her to give him her pin number, and withdrew money from her account. *Id.* Before he let her go, he held her at gunpoint and demanded her cellphone. *Id.* He then drove away. *Id.* M.H. ran to a store across the street and the police were contacted. *Id.* She described her assailant to the police as a black male, about five foot seven inches tall, with a "corn rows" hairstyle. *Id.* She later identified Morgan in a physical lineup. *People v. Morgan*, 2020 IL App (1st) 171331-U, ¶ 9. At trial, M.H. identified a photo of Morgan's SUV and the gun he used during the attack. *Morgan*, 2012 IL App (1st) 093388-U, ¶ 5.

The State called Maricel Marcial and Monica Solek to testify regarding an incident involving Morgan that occurred nine days after he sexually assaulted M.H. *Id.* at ¶¶ 6-9. Their testimony was introduced as admissible other-crimes evidence to show Morgan's identity, intent,

---

*Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1); *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018)); *see also Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004) ("[w]hile the review of a state court transcript is occasionally necessary in habeas cases, it is certainly not required and is, in fact, quite rare[;]" a federal habeas court may "rely[] instead on the facts as found in the Illinois Appellate Court rulings").

and *modus operandi*. *Id.* at ¶ 3. The trial court gave a limiting instruction to that effect before each witness's testimony and prior to deliberations. *Id.* at ¶¶ 6, 8, 10.

Marcial testified that she parked her car in her building's parking garage and was walking toward the door when she was approached by Morgan who put a gun to her head, pulled her to the ground by her hair, and dragged her around the corner. *Id.* at ¶ 8. Solek was in the parking garage at the time, and Marcial noticed Morgan looking in Solek's direction. *Id.* at ¶ 9. Upon seeing Solek, Morgan instructed Marcial to open up the garage door at which time he "broke away" and entered a dark green SUV. *Id.* Marcial described Morgan and his vehicle to the police, and identified him from a lineup. *Morgan*, 2020 IL App (1st) 171331-U, ¶ 12. At trial, she identified the same vehicle and gun that M.H. identified Morgan had used during the sexual assault. *Morgan*, 2012 IL App (1st) 093388-U, ¶ 9. Solek similarly testified that she observed an armed, black male with corn rows assault Marcial. *Id.* at ¶¶ 6-7. She also identified the same gun identified by M.H. *Id.* at ¶ 7.

Illinois State Police forensic scientist, Blake Aper, testified regarding the autosomal DNA analysis he performed on a blood stain found in the backseat of Morgan's SUV. *Morgan*, 2020 IL App (1st) 171331-U, ¶ 13. In autosomal analysis, Aper explained, a DNA sample is genetically typed at 13 different locations to create a DNA profile which can then be used for comparison purposes. *Id.* Aper determined that 11 of the 13 loci from the blood stain matched M.H.'s DNA profile, which meant she could not be excluded as having contributed the female DNA. *Id.*

From a statistical analysis perspective as to who could be excluded as a contributor as far as the general population was concerned, Aper explained that "[a]pproximately [one] in 200 trillion black, one in 2.9 trillion white, or one in five trillion Hispanic unrelated individuals could not be excluded from having contributed to the sample." *Id.* Aper stated that these numbers come from the "same numbers that the FBI [Federal Bureau of Investigation] uses for their statistical

calculator," explaining that "what [the FBI] did was they sampled a number, a couple hundred people in the population, and typed them to determine the frequencies that the types occur in the population." *Id.* at ¶ 14.

The jury found Morgan guilty on all counts of aggravated criminal sexual assault, kidnapping, and robbery. *Id.* at ¶ 15. He was sentenced to an aggregate prison term of 52 years. *Id.*

## B.    Morgan's Direct Appeal

Morgan appealed his convictions, arguing the trial court erred by admitting the evidence of other crimes to show intent and *modus operandi*, and by providing an overly broad jury instruction that failed to limit the use of the other-crimes evidence to its relevant purpose. (Dkt. 13-4, p. 22-31.) He also challenged the calculation of various pecuniary penalties that were imposed. *Id.* at 32-42. The state appellate court modified the assessment of certain fines and fees, but affirmed the judgment in all other respects, holding that Morgan forfeited his jury instruction claim by failing to object to it at trial or raise it in a posttrial motion, and that there was no error in the admission of other-crimes evidence. *Morgan*, 2012 IL App (1st) 093388-U, ¶¶ 13, 17, 22.

In October 2012, Morgan wrote to the clerk's office regarding the status of his petition for rehearing that he had filed following his direct appeal. (Dkt. 13-7, p. 3, 20-21.) He was advised that his petition for rehearing was denied in May of that year. *Id.* at 21-22. Morgan then sought leave to file a late petition for leave to appeal (PLA). *Id.* at 3-4. His PLA reraised the alleged errors made by the trial court in admitting the other-crimes evidence and providing an overly broad limiting instruction. *Id.* at 7. He also claimed appellate counsel was ineffective for failing to argue the trial court erred in denying him a continuance to further investigate the DNA evidence. *Id.*

The Illinois Supreme Court accepted Morgan's untimely PLA, and then denied it. *People v. Morgan*, 39 N.E.3d 565 (Ill. May 29, 2013) (Table).

4

C.      **Morgan's Postconviction Proceedings**

On November 26, 2013, Morgan mailed to the state trial court a *pro se* postconviction petition. (Dkt. 13-9, p. 1.) His petition asserted several grounds of ineffective assistance of trial counsel, including counsel's failure to properly investigate the DNA test results or hire a DNA expert, and counsel's failure to object to and preserve for appeal the issue of the trial court's other-crimes evidence limiting instruction. (Dkt. 13-9, p. 6-7.) He also alleged that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), and used perjured testimony at trial, that the police's identification procedures were impermissibly suggestive, and that the trial court erred in denying him a continuance to allow further investigation into the DNA evidence. (Dkt. 13-9, p. 7-8.)

At a status hearing on the petition in April of 2016, postconviction counsel, who had been appointed to represent Morgan, advised the trial court that she was investigating his claims regarding the DNA evidence and whether an amendment to the petition was warranted based on "some of the current practices in the forensic DNA community." *Morgan*, 2020 IL App (1st) 171331-U, ¶ 17. Counsel explained that "[t]he FBI released a couple months ago that their CPI [combined probability of inclusion] statistics were flawed" as to the rarity of genotype frequencies in the general population, and that "it has now become somewhat of a complicated issue as to [the] legal significance … on the statistical models that the FBI was [previously] using." *Id.* Upon completing her investigation, counsel filed an Illinois Supreme Court Rule 651(c) certificate, stating she was "unable to supplement the *pro se* petition with affidavits, or independent scientific evidence," and that the petition adequately presented Morgan's claims. (Dkt. 13-10, p. 1-2); *see also* Ill. Sup. Ct. R. 651(c) (requiring attorney certify that decision whether to amend *pro se* postconviction petition was made upon consultation with petitioner and examination of the record).

The State filed a motion to dismiss the postconviction petition, (Dkt. 13-11), which the trial court granted. (Dkt. 13-12, p. 2-8.) Morgan appealed the dismissal and, with the assistance of postconviction appellate counsel, raised one claim: that he was denied reasonable assistance of postconviction counsel due to his attorney's failure to amend the petition to reflect the "flawed" FBI statistics discussed at the April 2016 status hearing. (Dkt. 13-13, p. 1-20.) "[B]y focusing exclusively on the issue of postconviction counsel's reasonableness," the state appellate court explained, Morgan "forfeited for review any substantive claim challenging the dismissal of the petition on the merits." *Morgan*, 2020 IL App (1st) 171331-U, ¶ 30. And as to his unreasonable assistance of postconviction counsel argument, the claim was denied as meritless. *Id.* at ¶ 44.

Morgan subsequently filed a petition for rehearing, (Dkt. 13-17, p. 29-32), which was denied on August 31, 2020. *Id.* at 50. He learned of the denial in March 2021, after writing to the clerk's office and requesting the status of his petition. *Id.* at 25. Morgan filed a motion for leave to file a late postconviction PLA, listing both COVID-19 and the delayed notice as cause for the late filing. *Id.* at 3-4. His *pro se* postconviction PLA reargued his claim that he was denied reasonable assistance of postconviction counsel, and further alleged that Aper's testimony comparing the DNA obtained from the blood stain and M.H.'s DNA profile denied him due process. *Id.* at 7. The Illinois Supreme Court allowed the late filing, but denied his postconviction PLA. *People v. Morgan*, 175 N.E.3d 95 (Ill. Sept. 29, 2021) (Table).

## II.        DISCUSSION

### A.        Morgan's Habeas Petition and Renewed Motion for Counsel

Morgan's § 2254 petition asserts two claims. First, he argues that the evidence was insufficient to prove his guilt beyond a reasonable doubt because Aper's testimony regarding the DNA evidence was based on the FBI's "flawed" statistical models. (Dkt. 5, p. 6.) Second, he argues

that his trial attorney was constitutionally ineffective for failing to object to Marcial and Solek's testimony as inadmissible other-crimes evidence and for failing to object to as overly broad the trial court's limiting instruction as to their testimony. *Id.* [2]

In addition to his § 2254 petition, Morgan has also filed in this court motions for the appointment of counsel. (Dkt. 4, 14, 23, 29.) The court has denied all but his latest request for attorney representation, which seeks not only the appointment of counsel, but also a DNA expert and an evidentiary hearing to address the DNA issue. (Dkt. 29.) The court has already ensured that Morgan has had adequate library access and time to prepare his pleadings in this case. (Dkt. 19.)

As discussed below, Morgan's § 2254 claims are both untimely and procedurally defaulted. Neither the appointment of counsel, nor an evidentiary hearing, could aid Morgan in overcoming these procedural defects. *See Moreland v. Eplett*, 18 F.4th 261, 272 (7th Cir. 2021) ("Nor does he explain how counsel's advice or an evidentiary hearing would have strengthened his case…"); *Mayberry v. Dittmann*, 904 F.3d 525, 532 (7th Cir. 2018) ("a hearing is warranted when a petitioner alleges facts, which if proven, would entitle him to relief"). Morgan's renewed motion for appointment of counsel, (Dkt. 29), and supplement to that motion, (Dkt. 30), are therefore denied. The Court now turns to the timeliness and procedural default issues presented in this case.

---

2 Morgan appears to raise a third claim in his reply brief, arguing his confrontation clause rights under the Sixth Amendment were violated because he was not able to confront the "flawed" DNA evidence. (Dkt. 28, p. 7.) Arguments raised for the first time in a reply brief, such as this one, are waived. *See White v. United States*, 8 F.4th 547, 552-53 (7th Cir. 2021) (citing *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019); *United States v. Vitrano*, 747 F.3d 922, 925 (7th Cir. 2014)) ("arguments raised for the first time in [petitioner's] reply brief are waived because they leave no chance to respond"). Beyond the waiver, this claim is procedurally defaulted because Morgan never presented a confrontations clause claim to the state courts. *See Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016) ("when the federal issue was not fairly presented to the state courts and those courts would now hold the claim procedurally barred, the procedural default doctrine precludes federal post-conviction review of the federal claim") (internal quotation marks and citation omitted).

### B.    Respondent's Statute of Limitations Argument

Respondent first argues that Morgan's claims must be denied as he failed to comply with 28 U.S.C. § 2244(d)'s statute of limitations. (Dkt. 12, p. 5-11.) Respondent is correct.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a "tight time line" for prisoners to challenge their state criminal convictions via a federal habeas corpus petition. *Mayle v. Felix*, 545 U.S. 644, 662 (2005). Under the AEDPA, "a 1-year period of limitation" applies to "an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1).

Ordinarily, this one-year clock begins to run "from 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'" *Mayle*, 545 U.S. at 662 (quoting § 2244(d)(1)(A)). The statute, however, provides three circumstances under which a later start date may be used: (1) where the state creates an unconstitutional impediment that prevented the filing of the habeas petition; (2) where the Supreme Court recognizes a new, retroactive constitutional right; and (3) where newly discovered evidence forms the factual predicate of a claim. § 2244(d)(1)(B)-(D).

As mentioned above, Morgan's habeas petition raises two claims: (1) a sufficiency-of-the-evidence claim based on allegedly flawed DNA evidence; and (2) an ineffective assistance of trial counsel claim based on the admission of other-crimes evidence and related jury instruction. The court considers each claim's timeliness separately, as the limitations period's starting date may differ between the two claims. *See Davis v. United States*, 817 F.3d 319, 328 (7th Cir. 2016).

### 1.    Morgan's Ineffective Assistance of Trial Counsel Claim is Untimely under § 2244(d)(1)(A)

Beginning first with his ineffective assistance of trial counsel claim, the court reviews the timeliness of this claim under § 2244(d)(1)(A), as the argument advanced by Morgan does not

support a start time other than the date on which his criminal judgment became final on direct review.

Morgan's conviction became final on August 27, 2013, 90 days after the Illinois Supreme Court denied his direct appeal PLA, *Morgan*, 39 N.E.3d 565, when the time to file a petition for writ of certiorari in the United States Supreme Court expired. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (judgment is final under § 2244(d)(1)(A) when the time for filing a certiorari petition in the United States Supreme Court expires); U.S. Sup. Ct. R. 13.1 (certiorari petition must be filed within 90 days after entry of state court judgment).

The limitations period ran for 90 days until November 26, 2013, the date Morgan certified that he placed his *pro se* state postconviction petition in the prison mail system. (Dkt. 13-9, p. 1); *see Ray v. Clements*, 700 F.3d 993, 1004 (7th Cir. 2012) (holding prison mailbox rule applies to petitions for state postconviction relief unless state law clearly rejects it); *People v. Shines*, 33 N.E.3d 169, 175 (Ill. App. Ct. 2015) ("Under the mailbox rule, pleadings, including posttrial motions …, are considered … filed on the day they are placed in the prison mail system by an incarcerated defendant.").

The filing of Morgan's postconviction petition tolled the limitations period. *See Perry v. Brown*, 950 F.3d 410, 412 (7th Cir. 2020) (citing § 2244(d)(2)) ("The time during which a properly filed state collateral attack is pending is excluded from the one year available to file in federal court."). But tolling stopped once his postconviction petition was no longer "pending" in state court. As mentioned above, the Illinois Appellate Court denied Morgan's petition for rehearing on August 31, 2020. (Dkt. 13-17, p. 50.) The time to file a postconviction PLA in the Illinois Supreme Court expired thirty-five days later, on October 5, 2020. *See* Ill. Sup. Ct. R. 315(b). Morgan,

however, did not file another pleading in state court until April 1, 2021, when he sought leave to file a late postconviction PLA. (Dkt. 13-17, p. 2-4.)

Though the Illinois Supreme Court allowed Morgan to file an untimely PLA, "this does not mean that the proceeding was 'pending' during the gap between the end of the authorized filing period and the belated acceptance." *Griffith v. Rednour*, 614 F.3d 328, 330 (7th Cir. 2010) (reaffirming *Fernandez v. Sternes*, 227 F.3d 977 (7th Cir. 2000)); *id.* (quoting *Fernandez*, 227 F.3d at 980) ("it is not sensible to say that the petition continues to be 'pending' after the time for further review has expired without action to continue the litigation[;] [t]hat a request may be resuscitated does not mean that it was 'pending' in the interim.").[3] Rather, based on *Griffith* and *Fernandez*, Morgan's postconviction petition was not pending between the state appellate court's denial of his petition for rehearing and expiration of time to seek further review, through the state supreme court's acceptance of his late PLA. *See Griffith*, 614 F.3d at 329-30 ("The point of *Fernandez* is that state courts' decisions do not have retroactive effect. Once a petition has stopped being 'pending,' nothing a state court does will make it 'pending' during the time after the federal clock began to run and before another paper is filed in state court.").

Respondent also asks this court to not count as "pending" the 35-day period that Morgan had to file a PLA following the state appellate court's denial of his petition for rehearing, arguing the one-year habeas clock should be considered to have restarted on the date of the state appellate court's decision. (Dkt. 12, p. 8-9.) But whether the 35-day period counts as "pending" does not matter for this court's timeliness determination, and the court thus declines the invitation to decide that issue now. *See Fernandez*, 227 F.3d at 980 ("It is unnecessary to decide, and we therefore

---

3 This reasoning does not apply to Morgan's late PLA on direct review. Under § 2244(d)(1)(A), the limitations period begins to run not when criminal proceedings are no longer "pending," but instead when direct review of a judgment "bec[o]me[s] final." § 2244(d)(1)(A).

reserve, the question whether time provided for filing a petition or appeal to a higher court is treated as time during which an application is pending, if the time expires without a filing."); *see also Sinico v. Watson*, 19 C 7738, 2021 WL 4283058, at *4 (N.D. Ill. Sept. 21, 2021). Morgan's ineffective assistance claim is late regardless of whether those 35 days are tolled.

Assuming (without deciding), § 2244(d)(1)(A)'s limitations period began to run again on October 6, 2020, the day after his time to file a postconviction PLA expired, it continued to run for another 177 days until April 1, 2021, the date Morgan sought leave to file an untimely PLA. The limitations period was then tolled until September 29, 2021, when the Illinois Supreme Court denied Morgan's postconviction PLA. *Morgan*, 175 N.E.3d 95.

Following the denial of his postconviction PLA, Morgan had 98 days, or until January 5, 2022, to file a federal habeas corpus petition. Morgan's petition was received on May 4, 2022, but the court will consider the filing date to be the day he signed the petition, as that is the earliest date on which he could have put the pleading into the prison mailing system. *See Jones v. Bertrand*, 171 F.3d 499, 501-02 (7th Cir. 1999). By this calculation, which is the most favorable this court can give Morgan, his petition, signed on April 11, 2022, (Dkt. 5, p. 7), was three months overdue. His ineffective assistance of trial counsel claim is therefore untimely under § 2244(d)(1)(A).

### 2. Morgan's DNA-Sufficiency Claim is Untimely under § 2244(d)(1)(D)

As for the DNA-sufficiency claim, though Morgan's petition does not specifically allege that he is entitled to a later start date, the court acknowledges, as does Respondent, that his argument is premised on the allegation that the "DNA [e]vidence … was deemed flawed … in 2015." (Dkt. 5, p. 6.) The court will therefore consider the timeliness of this claim under § 2244(d)(1)(D).

"Section 2244(d)(1)(D) gives [habeas petitioners] the benefit of a later start if vital facts could not have been known by the date the appellate process ended." *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000). Under this section, "[t]ime begins when the prisoner knows (or through diligence could discover) the important facts." *Id.* The Court must therefore consider "both the date on which [Morgan] discovered the factual predicate of the claim *and* whether [Morgan] exercised due diligence in discovering that information." *Villanueva v. Anglin*, 719 F.3d 769, 774 (7th Cir. 2013) (emphasis in original) (citation omitted).

Morgan's petition does not help the Court answer either of these questions. He did, however, submit a Washington Post article dated May 29, 2015, which discusses the errors discovered in the FBI's statistical models.[4] (Dkt. 29, p. 3-5.) His attorney cited this article on postconviction appeal, stating the FBI notified crime labs of these issues "[i]n May 2015." (Dkt. 13-13, p. 15.) It appears then that by late May 2015, Morgan could have discovered, through diligence, the factual predicate of his due process claim. *Villanueva*, 719 F.3d at 774.

At that time, however, Morgan's postconviction petition, filed on November 26, 2013, was pending before the state court. Thus, his limitations period would have been tolled since the date of that filing. § 2244(d)(2). Consistent with the analysis above, the court will assume (without deciding) tolling ceased on October 5, 2020, the date his time to file a postconviction PLA expired. *See Fernandez*, 227 F.3d at 980. Starting the one-year clock from October 6, 2020, his limitations period ran for 177 days until the filing of his motion for leave to file a late postconviction PLA on April 1, 2021. And when the limitations period recommenced on September 30, 2021, the day after his postconviction PLA was denied, he had 188 days left, until April 6, 2022, to file his habeas

---

4 *See* Spencer S. Hsu, *FBI Notifies Crime Labs Of Errors Used In DNA*, Wash. Post (May 29, 2015), https://www.washingtonpost.com/local/crime/fbi-notifies-crime-labs-of-errors-used-in-dna-match-calculations-since-1999/2015/05/29/f04234fc-0591-11e5-8bda-c7b4e9a8f7ac_story.html (last visited Feb. 27, 2022).

corpus petition. As previously discussed, the earliest Morgan's petition could have been filed, however, was April 11, 2022, making his DNA-due process claim untimely under § 2244(d)(1)(D), though just by five days.

### 3. Morgan is Not Entitled to Equitable Tolling as to Either Claim

Given the untimeliness of his claims, Morgan asks this court to equitably toll the statute of limitations period. (Dkt. 28, p. 1-4.) He contends that he has diligently pursued his claims in state court, and his failure to comply with the limitations period stems not from his own error, but from a clerical error where the state appellate court first failed to notify him of the denial of his petition for rehearing, and then where the clerk's office included the incorrect case number in their letter informing him of the denial. *Id.* at 2-4; (Dkt. 23, p. 3.) Morgan argues the delayed notice and the added confusion that the clerk's letter caused him warrant equitable tolling.

In some circumstances, a federal habeas petitioner may be able to overcome a breach of AEDPA's one-year limitations period via the doctrine of equitable tolling. *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016). "Although not a 'chimera—something that exists only in the imagination,' … equitable tolling is an extraordinary remedy that is 'rarely granted.'" *Id.* (citations omitted). A habeas petitioner must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Moreland*, 18 F.4th at 270 (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted). The Court will not apply equitable tolling if either of these elements are not met. *Id.*

As for the diligence requirement, Morgan must show that he "diligently tried to protect [his] rights." *Moreland*, 18 F.4th at 270-71 (quoting *Perry*, 950 F.3d at 412) (internal quotation marks omitted). Though only "reasonable diligence" is required for equitable tolling (as opposed

to "maximum feasible diligence"), Morgan must establish that he exercised such "reasonable effort throughout the limitations period." *Id.* at 271 (citations omitted). And as for "extraordinary circumstances," this element is met "only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [his] control." *Id.* (citing *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257 (2016) (emphasis in original)). In conducting this inquiry, the court "looks at the entire hand that [Morgan] was dealt and use[s] a flexible standard that encompasses all of the circumstances that he faced and the cumulative effect of those circumstances to determine whether they were extraordinary and truly prevented timely filing of his habeas petition." *Id.* (cleaned up) (internal quotation marks and citations omitted).

This court acknowledges that equitable tolling has been recognized by district courts in this circuit "where, despite due diligence, petitioners were unable to obtain vital information bearing on their claims because of exceptional circumstances outside of their control." *United States ex rel. Zapada v. Lemke*, 13 C 6987, 2014 WL 1647126, at *5 (N.D. Ill. Apr. 23, 2014) (citing *Golden v. Oliver*, 264 F.Supp.2d 701 (N.D. Ill. 2003) (equitable tolling warranted where state appellate court did not notify inmate of the dismissal of his postconviction petition for 17 months, despite inmate's repeated inquiries); *United States ex rel. Wesley v. Chrans*, 00 C 4826, 2001 WL 1155260 (N.D. Ill. Sept. 28, 2001) (equitable tolling applied where, despite numerous inquiries by petitioner, the postconviction trial court took 11 months to inform him of the dismissal of his petition)). Morgan's argument that he is entitled to equitable tolling for lack of notice of the dismissal of his postconviction petition for rehearing, however, is distinguishable.

First, Morgan followed up with the state appellate court only one time as to the status of his petition for rehearing and, admittedly, "allow[ed] time to pas[s]" before he did so, citing COVID-19 as the reason. (Dkt. 13-17, p. 3.) But the mere existence of COVID-19 does not warrant

equitable tolling, and Morgan provides no explanation as to why he could not have inquired with the clerk's office earlier as to the status of his petition. *See United States v. Reeves*, 14 C 1588, 2022 WL 17832713, at *7 (N.D. Ill. Dec. 21, 2022) (explaining petitioners must provide "some explanation" as to how pandemic caused disruption or delay). His decision to allow the time to pass belies his claim that he diligently pursued his rights throughout his state court proceedings.

Second, and perhaps more important, ample time remained in the limitations period for Morgan to file his federal habeas corpus petition following the denial of his postconviction PLA. *Gray v. Zatecky*, 865 F.3d 909, 913 (7th Cir. 2017) ("the length of time remaining for the applicant to file is quite pertinent"). Under § 2244(d)(1)(A)'s start time for the ineffective-assistance claim, he had 98 days to timely file his petition, and under § 2244(d)(1)(D)'s start time for the DNA-sufficiency claim, 188 days remained. In other words, Morgan had months to file his habeas corpus petition once his postconviction proceedings concluded in state court, but failed to timely do so. *See Pace*, 544 U.S. at 419 (petitioner who "sat" on his rights "for five more months *after*" his state court proceedings became final before deciding to seek relief in federal court did not exercise diligence for purposes of equitable tolling) (emphasis in original). He does not provide any explanation for the delay during this time period. *See Moreland*, 18 F.4th at 271 ("Reasonable diligence requires that [Morgan] prove he diligently tried to protect his rights over time, not just at some points … [during] the limitations period."). And to the extent he claims he was confused as to the time remaining in the limitations period, such an argument does not warrant equitable tolling.[5] *Id.* ("simple legal errors, such as ignorance of the federal deadline do not suffice").

---

[5] Nor can Morgan blame his alleged confusion on the scrivener's errors, including the case number and salutation, contained in the clerk's letter regarding the denial of his postconviction petition for rehearing, as the letter correctly identified Morgan and his prison ID number, and enclosed a copy of the order for his records. (Dkt. 13-17, p. 25, 50.)

In sum, under the doctrine's "flexible standard," the circumstances do not demonstrate that Morgan is eligible for equitable tolling. *Moreland*, 18 F.4th at 271. Nor, as will be discussed further below following the procedural default analysis, can he excuse the untimeliness of his petition through an "actual innocence" argument. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

For all the reasons above, Morgan's claims are denied as time-barred.

## C. Respondent's Procedural Default Argument

Even if Morgan could overcome the untimeliness of his claims, his petition would fail on another procedural defect: failure to exhaust. As Respondent argues, Morgan's claims are procedurally defaulted because he failed to raise them through one complete round of state court review. (Dkt. 12, p. 12-14.)

Before bringing claims to a federal habeas court, a state prisoner must first exhaust his available state court remedies. *See Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing § 2254(b)(1)(A)). To satisfy this requirement, the "state prisoner[] must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Illinois, this includes presenting the claims in a petition for leave to appeal to the state supreme court. *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018) (citing *Boerckel*, 526 U.S. at 845-46).

Failure to fairly present a claim through one complete round of state court review renders the issue procedurally defaulted. *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016). Procedural default precludes federal habeas corpus review unless "the petitioner demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Id.* at 386 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

### 1.   Morgan's Claims are Procedurally Defaulted

Both Morgan's DNA-sufficiency and ineffective-assistance claims are procedurally defaulted. Neither claim was presented on direct review. Rather, Morgan raised only trial court errors as to the admission of other-crimes evidence and overly broad jury instruction in his direct appeal and direct appeal PLA. (Dkt. 13-4, p. 22-31); (Dkt. 13-7, p. 7.) He did not, as he does before this court, challenge the effectiveness of trial counsel's assistance in handling these claims. And the only mention of the DNA evidence was made in his direct appeal PLA, where Morgan argued his appellate counsel was ineffective for failing to challenge on direct review the trial court's denial of a continuance for further investigation into the DNA results. (Dkt. 13-7, p. 7.) He did not raise a due process or insufficient evidence argument.

In state collateral proceedings, Morgan presented ineffective assistance of trial counsel issues as to the handling of the DNA evidence and the failure to object to the other-crimes evidence jury instruction in his postconviction petition. (Dkt. 13-9, p. 6-7.) But he dropped all substantive claims on postconviction appeal, arguing only that he was denied reasonable assistance of postconviction counsel. (Dkt. 13-13, p. 1-20); *see also Morgan*, 2020 IL App (1st) 171331-U, ¶ 30 (Morgan's appeal "focus[ed] exclusively on the issue of postconviction counsel's reasonableness, … [and] forfeited for review any substantive claim challenging the dismissal of the petition on the merits.").

The court notes that Morgan raised a due process claim concerning the sufficiency of the DNA evidence in his *pro se* postconviction PLA. (Dkt. 13-17, p. 7.) But raising a claim only to the state supreme court does not satisfy the exhaustion requirement. Morgan was required to afford each level of state court review the "opportunity to act on his claims before" presenting them to this court in a habeas petition. *Boerckel*, 526 U.S. at 842; *see also Shinn v. Ramirez*, 142 S. Ct.

1718, 1732 (2022) ("it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without [giving] an opportunity to the state courts to correct a constitutional violation"). He failed to do so. Both his DNA sufficiency-of-the-evidence and ineffective-assistance claims are therefore procedurally defaulted.

### 2. Morgan Cannot Excuse the Procedural Defaults of his Claims

Morgan cannot excuse his defaults through either cause and prejudice, or by demonstrating a fundamental miscarriage of justice. As to cause and prejudice, cause is an "objective factor, external to [Morgan], that impeded [his] efforts to raise the claim in an earlier proceeding." *Johnson v. Foster*, 786 F.3d 501, 505 (7th Cir. 2015) (citing *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013)). Examples of cause include: (1) interference by officials making compliance impractical; (2) the factual or legal basis was not reasonably available to counsel; or (3) ineffective assistance of counsel. *See Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991)).

Morgan argues the procedural default of his DNA claim should be excused due to counsel's constitutionally defective performance at each stage of proceedings. He argues his trial counsel was deficient in failing to adequately investigate the DNA evidence, his appellate counsel was deficient in failing to raise the issue on direct appeal, and his postconviction appellate counsel was deficient in forfeiting the claim on postconviction appeal. (Dkt. 28, p. 6, 8-9.)

But to excuse a default on grounds of ineffective assistance of counsel, the ineffective assistance claim must, itself, be properly preserved in the state courts.[6] *Edwards v. Carpenter*, 529

---

6 To the extent Morgan argues *Massaro v. United States*, 538 U.S. 500 (2003), relieves him of the requirement that he must exhaust any ineffective assistance of counsel claim to assert it as cause to excuse his procedural defaults, (Dkt. 28, p. 8), he is mistaken. *Massaro* governs ineffective assistance claims raised by federal criminal defendants in collateral proceedings under 28 U.S.C. § 2255. *See Hayes v. Battaglia*, 403 F.3d 935, 937 (7th Cir. 2005). "This is a rule of practice for federal judges in federal criminal cases and does not change the relation between state and federal courts." *Id.* (citations omitted).

U.S. 446, 453 (2000); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). As explained above, Morgan did not exhaust any ineffective assistance of counsel argument. Nor can he argue his postconviction attorney was ineffective for failing to preserve his claims in postconviction proceedings, as such an argument does not constitute grounds to excuse a default. *See Davila*, 137 S. Ct. at 2062 (citing *Coleman*, 501 U.S. 722) ("Because a prisoner does not have a constitutional right to counsel in state postconviction proceedings, ineffective assistance in those proceedings does not qualify as cause to excuse a procedural default.").[7] Morgan cannot satisfy the cause and prejudice exception to obtain a merits review by this court for either of his § 2254 claims.

This leaves the fundamental miscarriage of justice (actual innocence) exception. This exception may be applied not only to a procedurally defaulted claim, but also to a claim that is time-barred under § 2244(d). *See McQuiggin*, 569 U.S. at 386. To show actual innocence to defeat a default, Morgan must demonstrate that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This is a "demanding" and "seldom met" standard. *Id.* (citing *House v. Bell*, 547 U.S. 518, 538 (2006)). Morgan must present new, reliable evidence that was not presented at trial --- such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence --- to make a credible claim of actual innocence. *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324). "[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who places him out of the city, with credit card

---

7 In *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013), the Supreme Court recognized narrow exceptions to the *Coleman* rule, whereby prisoners in certain states can use ineffective assistance of postconviction counsel as cause to excuse a procedural default. The *Martinez-Trevino* exceptions, however, have not been extended to Illinois prisoners and, therefore, are not applicable to Morgan's case. *Crutchfield v. Dennison*, 910 F.3d 968, 978 (7th Cir. 2018).

slips, photographs, and phone logs to back up the claim.'" *McDowell v. Lemke*, 737 F.3d 476, 483-84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005)).

Morgan presents no new evidence to this court relating to an actual innocence argument other than his assertion that Aper's testimony was based on "flawed" DNA statistics that improperly enhanced the rarity of the DNA recovered from the blood stain in his SUV. He contends that further investigation into the allegedly flawed statistical evidence could have "at least created … a reasonable doubt as to guilt," and could have potentially revealed other evidentiary issues, such as "[t]he laboratory test might be flawed in some way; there could be chain of custody problems; [or] the flaw[ed] data allegedly developed could be shown … not to be sufficiently probative on the identification issue." (Dkt. 28, p. 6.)

Morgan's theories as to how the evidence could be affected by the FBI's statistical models, however, do not satisfy *Schlup*'s stringent, actual-innocence standard. None of the information he presents to this court exculpates him from the crime, nor constitutes "evidence of innocence so strong that [this] court cannot have confidence in the outcome of the trial…" *Gladney v. Pollard*, 799 F.3d 889, 896 (7th Cir. 2015) (citing *Schlup*, 513 U.S. at 316).

Rather, Aper's testimony, which established that M.H. could not be excluded as the female DNA contributor to the blood sample recovered from the backseat of Morgan's SUV, was just one piece of evidence connecting him to the crime. M.H., herself, testified regarding the sexual assault, including the fact that Morgan came upon her in the parking lot of her apartment complex, that he forced her at gunpoint into the backseat of an SUV, and that he bit her and struck her with the gun during the attack, causing her to bleed from the head and neck. She was able to describe Morgan to the police and identify him from a physical lineup. M.H.'s identification of Morgan was corroborated not only by the DNA evidence recovered from the blood stain, but by the testimony

of Solek, who witnessed, and Marcial, who was involved in, a similar incident perpetrated by Morgan in the parking lot of their apartment complex just nine days later. There, too, Morgan brandished the same gun and drove the same SUV that he used during the attack on M.H. None of the arguments advanced by Morgan concerning the FBI's statistical models convince this court that it is more likely that not no reasonable juror would have convicted him in light of the testimony of these three witnesses. Morgan therefore cannot establish actual innocence to excuse the procedural defaults, nor the untimeliness of his claims. *See McQuiggin*, 569 U.S. at 386.

For the reasons above, Morgan is not entitled to habeas corpus relief. Both of his § 2254 claims are untimely and procedurally defaulted, and he is unable to satisfy the exceptions to overcome these procedural bars.[8] His habeas petition is therefore denied, as are his renewed motion for appointment of counsel and the supplement to that motion.

### III. Notice of Appeal Rights and Certificate of Appealability

Morgan is advised that this is a final decision ending his case in this court. If he wishes to appeal, he must file a notice of appeal with this court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Morgan need not bring a motion to reconsider this court's ruling to preserve his appellate rights. However, if he wishes the court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e)

---

8 Further, the overwhelming evidence shows that any alleged DNA sufficiency-of-the-evidence issue did not have a substantial and injurious effect on the verdict, *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), or in the case of Morgan's ineffective assistance of trial counsel claim, that he was prejudiced by counsel's alleged deficiencies. *See Strickland v. Washington*, 466 U.S. 668, 692 (1984). As discussed above, the evidence of Morgan's guilt was overwhelming: (1) M.H., the victim of the sexual assault, testified against him at trial; (2) Marcial and Solek corroborated Morgan's pattern of attack; (3) M.H. and Marcial identified Morgan from a physical line-up, and both identified the same vehicle Morgan drove during the respective attacks; (4) all three witnesses (M.H., Marcial, and Solek) identified Morgan's gun; and (5) the blood stain in Morgan's SUV was corroborated by both the DNA results and M.H.'s testimony.

motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

The court declines to issue a certificate of appealability. Such a certificate "may not issue 'unless the applicant has made a substantial showing of the denial of a constitutional right'" and error with this court's procedural determinations. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (quoting 28 U.S.C. § 2253(c)). Morgan must show that reasonable jurists could debate whether this court should have resolved his claims differently or that the issues are "adequate to deserve encouragement to proceed further." *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing *Slack*, 529 U.S. at 484) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Morgan cannot meet this standard.

### IV.     Conclusion

Morgan's habeas corpus petition, (Dkt. 5), renewed motion for appointment of counsel, (Dkt. 29), and supplement to that motion, (Dkt. 30), are denied. Any other pending motions are denied as moot. The court declines to issue a certificate of appealability. The Clerk is instructed to change the name of Respondent to Dr. Deanna Brookhart, Warden, Lawrence Correctional Center; and enter a judgment in favor of respondent and against petitioner. Civil Case Terminated.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE:   March 8, 2023**